# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA,**

**v.**                                        **Case No. 8:16-CR-245-T-26AEP**

**YINER MANCILLA CORTES**
_____ /

## SENTENCING MEMORANDUM

COMES NOW, the Defendant, YINER MANCILLA CORTES, by and through undersigned counsel, and files this Sentencing Memorandum in support of a reasonable sentence.  As grounds in support thereof, Mr. Mancilla Cortes shows as follows:

## FACTUAL AND PROCEDURAL HISTORY

Mr. Mancilla Cortes is a Columbian national who was born in Tumaco, Columbia, on April 18, 1980.  He and his 7 siblings were raised by their parents, Arbaccio and Yolanda to the best of their ability, notwithstanding their extreme poverty.

Mr. Mancilla Cortes' father, Arbaccio, was murdered when Mancilla Cortes was a teenager.  His father had been visited by a paramilitary group who advised that they wanted the plot of land that the father had been farming for years in order to support the family and that they would do whatever it took to

secure it. Arbaccio discussed this threat with his wife and the children who were old enough to understand, including Yiner. The family begged the father to give up the land to save his life. He agreed to stay away. But after a week or so, the family ran out of food and Arbaccio felt as if he had no choice but to return to the land to farm. Almost immediately, the family was advised that a neighbor had discovered Arbaccio's body on the farm, wrapped in plastic and covered in blood. The family traveled to the farm to retrieve their dead father. At this point, their living situation became almost unbearable and all of the siblings who were old enough to work were forced to do so to help support the family. Mr. Mancilla Cortes did what he could to help. He left school and became a fisherman. Around the age of 20, Mr. Mancilla Cortes lost his brother to a violent death, also at the hands of a paramilitary group.

In 1998, Mr. Mancilla Cortes began a relationship with Maria Elena Jimenez, his common-law wife. They have three (3) children together ranging in age from eleven (11) to fifteen (15). All three of the boys were attending school prior to Mr. Mancilla Cortes' incarceration. He is unsure whether they have been able to continue with their schooling since he was the sole support of the family and he has had almost no contact with his wife or children since his arrest.

In May of 2016, Mr. Mancilla Cortes had been unable to find work and was near the docks discussing his dire financial straits with an acquaintance. This acquaintance suggested that Mr. Mancilla Cortes could make money by transporting cocaine. Mr. Mancilla was desperate to feed his wife and children. He agreed to meet with individuals who were unknown to him regarding this opportunity. He expressed his reluctance to these individuals. They pressed him to make a decision quickly advising that if he didn't agree to take this trip they could easily find someone else who would. He agreed to make the trip, understanding that he would be transporting a large amount of cocaine.

On May 6, 2016, a boat containing Mr. Mancilla Cortes, his two co-defendants and approximately 771 kilograms of cocaine was boarded by the United States Coast Guard. All three individuals were detained and brought to the United States where they were charged with the instant offenses.

While traditionally, boat mules are brought up through the ranks of criminal organizations, they are now often recruits. This is the instant case. Mr. Mancilla Cortes was hired along with his co-defendants, neither of whom he had met prior to this trip, to move kilograms of cocaine. Factually, Mr. Mancilla Cortes was paid by others in the conspiracy. He had no equity interest in the drugs. He had no role in planning the criminal scheme and absolutely no role in the ultimate distribution of the cocaine. He did not recruit any other

participants; he had little knowledge of the scope of the broader conspiracy. Distinctly, no one reported to him.  He was less culpable than the logistics people, the distributors, the purchaser of the cocaine, the seller of the cocaine, or any other unindicted co-conspirators.  He was essentially a laborer on the boat.

Mr. Mancilla Cortes was not a member of any drug trafficking organization or a regular participant in drug trafficking.  When approached, he knew that it was "foolish" to go on the proposed voyage.  As a day-laboring fisherman with a family to care for, in a country lacking a functioning legal system, police, health care and other basic services for the poor, he risked everything for a small sum.

Mr. Mancilla Cortes admitted to some level of involvement at the time of his arrest.  Subsequently, Mr. Mancilla Cortes met with agent Coleman Duncan in an attempt to fully debrief regarding his knowledge of the participants in the conspiracy with which he was charged.  Agent Duncan spent considerable time attempting to speak with Mr. Mancilla Cortes to no avail.  While it was clear during this debriefing that Mr. Mancilla Cortes wanted to plead guilty to the offense, he had considerable difficulty discussing what he knew, when he knew it and who else may have been involved.  Frankly, given the circumstances surrounding his father's murder and the murder of his brother, Mr. Mancilla

Cortes' fear of cooperation in understandable.  He has experienced in the most horrifying way possible, what happens to people who don't play the game as expected.  Since the initial attempted debrief, Mr. Mancilla Cortes has expressed a willingness to speak to law enforcement again and has admitted his knowledge of the amount of cocaine being transported prior to the launch of the boat and has provided to counsel information regarding other individuals that were involved.  Undersigned counsel provided this information to Assistant United States Attorney, Jennifer Peresie, who declined to allow a second debrief due to his failure to cooperate during his first meeting with Agent Coleman.  Mr. Mancilla Cortes remains willing and able to speak with law enforcement regarding these issues.

## GUIDELINE CALCULATIONS

At 36 years of age, Mr. Mancilla Cortes has no prior arrests, convictions, or juvenile adjudications and is, thus, properly scored as a criminal history category I offender.  Because the offense involved more than 450 kilograms of cocaine, Mr. Mancilla Cortes' base offense level, pursuant to U.S.S.G. §2D1.1(c)(1), is a level 38.  After a 3-level acceptance of responsibility reduction, Mr. Mancilla Cortes' total offense level is a level 35.  The United States Probation Officer fails to include a 2- level reduction for "safety valve" based on Mr. Mancilla Cortes' inability or unwillingness to fully debrief with

Agent Duncan on one occasion.  Mr. Mancilla Cortes contends that he does, in fact, quality for "safety valve" based on his communications and admissions to the undersigned that were in turn passed on to the government.   Should the Court be inclined to entertain testimony from Mr. Mancilla Cortes at sentencing regarding his involvement and the involvement of others, it is believed that the government will not oppose Mr. Mancilla Cortes' request for an additional 2-level adjustment.  This 2-level adjustment for "safety valve" will bring his total offense level down to 33.  With a total offense level of 33 and a criminal history category of I, Mr. Mancilla Cortes' advisory guideline imprisonment range is 135 - 168 months (11 years, 3 months- 14 years) with a 10-year minimum mandatory penalty.

## REQUEST FOR A MITIGATING ROLE ADJUSTMENT PURSUANT TO U.S.S.G.  3B1.2

Mr. Mancilla Cortes submits that he is eligible for a 2-level mitigating role adjustment, pursuant to U.S.S.G. §3B1.2, which provides:

> Based on the defendant's role in the offense, decrease the offense level as follows: (a) If the defendant was a minimal participant in any criminal activity decrease by 4 levels. (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b), decrease by 3 levels.

As one of three persons found on a vessel transporting illegal drugs, Mr. Mancilla Cortes understands that his participation was not minimal.  He does,

however, believe that his participation qualifies as minor, i.e., characteristic of a defendant "who is less culpable than most other participants in the criminal activity." §3B1.2 App. N. 5.  He respectfully points out that his eligibility for a mitigating role adjustment has been clarified by recent actions of the U.S. Sentencing Commission, in amending §3B1.2.

Since before 2002, when Amendment 640 was issued, amending U.S.S.G. §3B1.2, the Sentencing Commission has expressed concern that "the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders. . . . [The] base offense levels derived from the Drug Quantity Table in §2D1.1 overstate the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under §3B1.2."  U.S.S.G. Amendment 640.  For this reason, the Commission modified the Drug Quantity Table in §2D1.1 "to provide a maximum base offense level of level 30 if the defendant receives an adjustment under §3B1.2," commenting:

> The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability (e.g., "mules" or "couriers" whose most serious trafficking function is transporting drugs and who qualify for a mitigating role adjustment).

U.S.S.G. Amendment 640.

The Commission's concerns are clearly applicable to the facts at bar. As a hired hand aboard a small drug-smuggling vessel, his role was indisputably limited to that of a "mule" or "courier," with no authority in the drug trafficking organization and consequently a low degree of individual culpability.

### Current state of §3B1.2, amended on Nov. 1, 2015

Since issuing Amendment 640 in 2002, the Commission has continued to be concerned about the under-application of the mitigating role adjustment. Recently, in a wide-ranging study of low-level offenders, the Commission concluded that the adjustment continues to be applied "inconsistently and *more sparingly than the Commission intended.*" U.S.S.G. Amendment 794 (emphasis supplied). Largely to encourage application of the adjustment to greater numbers of low-level offenders, the Commission issued Amendment 794, effective on November 1, 2015.

The most important change to the guideline under Amendment 794 was the addition of "a non-exhaustive list of factors for the court to consider in determining whether to apply a mitigating role adjustment and, if so, the amount of the adjustment." U.S.S.G. Amendment 794. All five of the listed factors have specific implications for Mr. Mancilla Cortes:

(i)    the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)   the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)   the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)   the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. §3B1.2 App. N. 3(C).

**Factors (i) - (iv): understanding, planning, authority, discretion**

The criteria in factors (i) through (iv) focus on the defendant's understanding, planning/organizing function, decision-making authority, responsibility and discretion. Mr. Mancilla Cortes' involvement displays none of these attributes. He was simply one of three hired hands whose presence was necessary for the moving of a small vessel over a stretch of ocean. Obviously, he possessed some understanding of the illegal purpose of the voyage, but it is unlikely that he knew any further details concerning the overall operation— such as the owner of the vessel or the ultimate destination of the cocaine. He was recruited on the street, by low-level service-providers, who dealt with intermediaries within a larger drug trafficking organization. Mr. Mancilla Cortes was not involved in acquiring drugs, organizing the drug smuggling

operation, or planning the route of the voyage.  He had zero decision-making authority, leadership responsibility, or operational discretion.   Mr. Mancilla Cortes' duties consisted mainly of checking the boat's location, taking his turn steering and as a lookout.   Essentially, Mr. Mancilla Cortes' role was "perform[ing] a limited function in the criminal activity."   U.S.S.G. §3B1.2 App. N. 3(A).  As the Application Note states, "[A] defendant who is convicted of a drug trafficking offense whose participation in that offense was limited to transporting or storing drugs . . . *may receive an adjustment under this guideline*."  *Id.* (emphasis supplied).

### Factor (v): "benefit" from the crime

Mr. Mancilla Cortes hopes that the Court will also consider factor (v) added to Application Note 3(C): "the degree to which the defendant stood to benefit from the criminal activity."  Mr. Mancilla Cortes received $500.00 prior to the trip and was supposed to receive another small sum upon his return.  The total amount contemplated was completely unrelated to the large value of the drugs transported.  At any rate, a miniscule, non-proprietary "benefit" of this type clearly meets the guideline's requirement for a mitigating role adjustment.  As the guideline states, "A defendant who is simply being paid to perform certain tasks *should be considered* for an adjustment under this guideline."  U.S.S.G. §3B1.2 App. N. 3(C) (emphasis supplied).

## Conduct "integral" or "indispensable" to the offense

As noted by the Commission in issuing Amendment 794, defendants historically have been improperly denied mitigating role adjustments because their conduct was "integral" (essential, indispensable) to the offense.   In Amendment 794, however, the Commission clarified beyond all doubt that the fact that a defendant's role was essential to the offense "does not alter the requirement . . . that the court must assess the defendant's culpability relative to the average participant in the offense."   U.S.S.G. Amendment 794.   "The fact that a defendant performs an essential or indispensable role in the criminal activity *is not determinative*.   Such a defendant *may receive an adjustment under this guideline* if he or she is substantially less culpable than the average participant in the criminal activity."   U.S.S.G. §3B1.2 App. N. 3(C) (emphasis supplied).

## Drug quantity as a basis for denial of adjustment

In the past, defendants serving as drug couriers were commonly denied mitigating role adjustments based on the amount of drugs being transported. This analysis, however, was invalidated by Amendment 794, which states that a transporter of drugs—although accountable for the drugs he transported under relevant conduct—"*may receive*" a mitigating role adjustment.   U.S.S.G. Amendment 794 (emphasis supplied).   It is further instructive that in the list of

factors courts are now directed to consider, <u>not one of the five factors refers to</u> <u>drug quantity</u>.  U.S.S.G. §3B1.2 App. N. 3(C) (emphasis supplied).  Under the current guidelines, Mr. Mancilla Cortes should not be denied a mitigating role adjustment on the grounds of drug quantity.

Should Mr. Mancilla Cortes receive the requested 2-level adjustment for minor role, it should be noted that such an adjustment would also reduce his base level determination under U.S.S.G. §2D1.1.  Specifically, §2D1.1 (a)(5) provides, "if the defendant receives an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level . . . is (i) 38, decrease by 4 levels;"  Where a defendant's base offense level is determined pursuant to §2D1.1(a)(5), that level is additionally reduced based on the mitigating role, whether that be a 4-level minimal participant, and 2-level minor participant, or a 3-level intermediate participant reduction.  *See* U.S.S.G. §3B1.2 App. N. 6.

### Culpability compared to the "average participant"

The fundamental requirement for the minor role adjustment is that, "based on the totality of the circumstances," the defendant's role in the offense "makes him substantially less culpable than the average participant in the criminal activity."   U.S.S.G. §3B1.2 App. N. 3(A).   According to the Sentencing Commission's Historical Notes to the 2015 Amendments, "average participant" refers narrowly to the defendant's "co-participants in the case at

hand."  This definition of "average participant" is somewhat problematic in a conspiracy involving the immediate presence of only three persons.  Even in these narrow circumstances, however, it is clear that Mr. Mancilla Cortes and the rest of the crew were "substantially less culpable" than other participants. He was not directly connected with the larger drug organization, did not plan or organize the voyage, did not procure the boat, did not load the cocaine, did not provision the vessel with supplies, and did not provide the GPS navigating device.  His role was that of a temporary hand hired by higher-ups to perform a limited, short-term set of menial tasks in exchange for a small cash payment unrelated to the value of the drug cargo.  Even in the narrow "case at hand," Mr. Mancilla Cortes qualifies for the 2-level minor role adjustment.

Mr. Mancilla Cortes is even less culpable when considered under a *true* "totality of the circumstances," which included the higher-level drug-trafficking conspirators who were actually responsible for his presence aboard the boat. The *true* "average participants" were those who created, organized, and managed an international drug-trafficking organization; sourced and obtained hundreds of kilograms of cocaine at wholesale; arranged for the maritime transport of large quantities of cocaine to recipients in distant countries; and continue to reap huge profits from the overall enterprise unconcerned for the "bottom of the rung" people such as Mr. Mancilla Cortes.

In view of Mr. Mancilla Cortes' minor and subordinate role in the conspiracy, and the intent and effect of the Sentencing Commission in issuing Amendments 640 and 794, it is clear that Mr. Mancilla Cortes is entitled to a 2-level minor role reduction and a corresponding 4-level reduction in his base offense level pursuant to U.S.S.G. §2D1.1(a)(5).  Regrettably, this Court is constrained by the 10 year minimum mandatory dictated by 21 U.S.C. 960(b)(1)(B)(ii).

### Variance Pursuant to 18 U.S.C. 3553(a)

Mr. Mancilla Cortes submits that a sentence of 120 months will adequately reflect his role as a low-level maritime drug trafficking courier and it will promote respect for the law; it will provide just punishment for the offense and it will illustrate that the law has appropriately considered Mr. Mancilla Cortes as an individual and has appropriately taken into consideration his unique human failings which mitigate his crime and his punishment. Additionally, such a sentence will send a strong message to individuals in other countries that even first-time offending, low-level drug trafficking couriers and mules will receive a significant term of incarceration.

WHEREFORE, the Defendant, YINER MANCILLA CORTES, respectfully moves this Honorable Court to depart downward pursuant to U.S.S.G. 3B1.2 and/or to vary pursuant to 18 U.S.C. §3553(a), below his low-

end advisory imprisonment range of 168 months as calculated by United States Probation or 135 months as calculated by the Defendant and to impose a total sentence of 120 months of incarceration to be followed by a 5-year term of supervised release.

DATED this 19th day of  October  2016.

Respectfully submitted,

/s/ Lisa B. McLean
Lisa B. McLean, P.A.
Florida Bar No.0883700
3802 West Bay to Bay Boulevard
Suite 12
Tampa, Florida 33629
Telephone: (813) 229-5343
Facsimile: (813) 229-47
Email: lisa@mcleanlegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of October 2016, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to:

AUSA Jennifer Peresie.

/s/ Lisa B. McLean
Lisa B. McLean